NORTH CAROLINA STATE HIGHWAY COMMISSION v. MILLS MANUFACTURING COMPANY

No. 7428SC563

(Filed 5 February 1975)

1. **Highways and Cartways § 1—connector road — limited access — authority of Board of Transportation**

 The State Board of Transportation had statutory authority under G.S. 136-89.50 to designate a new road across defendant's property a controlled-access facility as a part both of the State highway system and of the National System of Interstate Highways where the principal purpose of the road is to move traffic between Highway 70 and Interstate 40, notwithstanding the road has been given a secondary road number.

2. **Highways and Cartways § 1— connector road — designation as limited access facility — action not arbitrary**

    The State Board of Transportation did not act arbitrarily and capriciously in designating a road across defendant's property between Highway 70 and Interstate 40 as a controlled-access facility while failing to designate another connector between the two highways as a controlled-access facility where the court found that the shorter distance of the road across defendant's property created a hazardous traffic condition which did not exist in the other road.

3. **Highways and Cartways § 1— designation of connector as limited access facility — equal protection**

    Defendant's right to equal protection of the laws was not violated when a road across defendant's property between Highway 70 and Interstate 40 was designated a controlled-access facility while other connectors between the two highways were not so designated.

APPEAL by defendant from *Friday, Judge,* 25 February 1974 Session of Superior Court held in BUNCOMBE County.

The State Highway Commission (now the Board of Transportation) commenced this action in 1968 to condemn a portion of defendant's land for Highway Project No. 8.1909302. Defendant's land is located on the south side of U. S. Highway 70 a few miles east of Asheville in Buncombe County. At that point Highway 70 runs generally east and west and is a five-lane paved highway which serves as a major traffic artery for traffic moving between Asheville and Black Mountain and points on either side of those cities. When this action was commenced, defendant's property was a tract of approximately 11 acres, triangular in shape, bounded on the north by Highway 70, on the southeast by the tracks of the Southern Railway, and on the southwest by SR 2753, also known as Porter Cove Road. Porter Cove Road (SR 2753) was a dirt road which ran southward from Highway 70 along the southwestern boundary of defendant's property and then continued southward across the railroad tracks and for a short distance into a mountain cove known as Porter Cove, where it came to a dead end.

South of the railroad tracks and on the other side of the tracks from defendant's property, Interstate Highway 40 has been constructed. At this point, Interstate Highway 40 runs generally east and west and approximately parallel with, but on the other side of the railroad tracks from, Highway 70. When completed, Interstate Highway 40 will also carry traffic between Asheville and Black Mountain and points east and west of those cities.

In the present action plaintiff seeks to condemn a strip of land containing approximately 3 acres running in a corridor north and south through the middle of defendant's 11-acre tract. This corridor runs from Highway 70 on the north to the railroad tracks on the south and splits defendant's remaining property into two separate tracts, one lying west of the corridor and containing 3.37 acres and the other lying east of the corridor and containing 4.30 acres. Both of these remaining tracts abut upon and have access to Highway 70. Over this corridor which plaintiff has condemned, plaintiff has placed a fill and has constructed thereon a paved four-lane road which runs south from Highway 70, crosses over the railroad tracks on a bridge, and then continues south until it passes underneath Interstate 40. Entrance and exit ramps on either side of and connecting into and from Interstate 40 and the new road allow for interchange of traffic moving in either direction along Interstate 40 and the new road. South of these ramps the new road narrows from a four-lane to a two-lane road and runs into the old Porter Cove Road, which still dead ends in Porter Cove.

In condemning the property for the new road which runs across defendant's property, plaintiff designated the portion of the road which runs between Highway 70 and Interstate 40 as a controlled-access facility, and it is the right and power to make this designation which defendant seeks to challenge by this appeal.

In its answer as originally filed on 23 December 1969, defendant did not contest plaintiff's right to designate the new road across defendant's property as a controlled-access facility, but defendant did stress the diminution in value to its remaining property caused by the fact that defendant would be denied access from its two remaining and separated tracts into and from the new road. By motion filed on 5 October 1973 defendant for the first time challenged plaintiff's right to designate the road as a controlled-access facility. In this motion defendant prayed that plaintiff be ordered to allow defendant reasonable access to the new road. On 11 February 1974 defendant moved to be allowed to amend its answer to conform to its motion filed 5 October 1973 in order to present in the pleadings the questions sought to be raised by that motion. After hearing on these motions, the court entered an order dated 20 February 1974 in which the court made findings of fact and conclusions of law on the basis of which the court denied defendant's 5 October

1973 motion. By separate order dated and filed 28 February 1974 the court allowed defendant's motion to amend its answer.

Defendant appeals from the order denying its 5 October 1973 motion.

*Attorney General Carson by Deputy Attorney General R. Bruce White, Jr. and Assistant Attorney General Guy A. Hamlin for plaintiff appellee.*

*Bennett, Kelly & Cagle, P.A., by E. Glenn Kelly for defendant appellant.*

PARKER, Judge.

Article 6D of G.S. Chap. 136, entitled "Controlled-Access Facilities," contains the following:

G.S. 136-89.49: *"Definitions.*—When used in this Article:

\* \* \* \* \*

"(2) 'Controlled-access facility' means a State highway, or section of State highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property, or others, shall have only a controlled right or easement of access."

G.S. 136-89.50: *"Authority to establish controlled-access facilities.*—The Board of Transportation may designate, establish, abandon, improve, construct, maintain and regulate controlled-access facilities as a part of the State highway system, National System of Interstate Highways, and Federal Aid Primary System whenever the Board of Transportation determines that traffic conditions, present or future, justify such controlled-access facilities, or the abandonment thereof."

[1] Defendant contends that plaintiff has statutory power to establish a controlled-access facility only over a section of highway which is either a part of the State highway system, a part of the National System of Interstate Highways, or a part of the Federal Aid Primary System, and that the road here involved does not fall into any of these classifications but is part of the secondary road system. In support of this contention, defendant points to testimony in the record that the new road across its property has been designated State Road 2838 and that

"SR 2838 was constructed for the purpose of relocating the Porter Cove Road to lead to the Porter Cove area" and that it "serves as a county road." The trial court, however, found that the new road was condemned both for the relocation of Porter Cove Road (old SR 2753) and for access to and exit from Interstate 40, and there is ample evidence in the record to support such a finding. There is evidence that Porter Cove Road south of its underpass beneath Interstate 40 is a two-lane road which dead ends a short distance south of Interstate 40, that the portion of the road north of Interstate 40 and connecting into Highway 70 is a four-lane road which serves as a connector between Interstate 40 and Highway 70, and that the traffic projections for the road were for 4000 vehicles per day in 1968 and for 7800 vehicles per day in 1988. It is apparent from all of the evidence that although the new road across defendant's property does serve to carry the same limited local traffic into and out of Porter Cove which was formerly carried by the old Porter Cove Road, the principal purpose of the new road is to carry traffic to and from the Interstate Highway. From the design of the new road and from the projected traffic volume to be carried thereon, it is apparent that by far the largest portion of such traffic will be traffic moving between Highway 70 and Interstate 40. Whatever the new road is called or by whatever number it is designated, its principal functional purpose is to serve as an important connector between these two major traffic arteries. We hold that plaintiff had statutory authority under G.S. 136-89.50 to designate the new road across defendant's property a controlled-access facility as a part both of the State highway system and of the National System of Interstate Highways.

[2] Defendant next contends that if it be found that plaintiff had statutory authority to designate the new road as a controlled-access facility, its action in so doing in this case was arbitrary, capricious and whimsical. In support of this contention defendant points to the fact that a similar connector between Interstate 40 and Highway 70, known as Patton Cove Road, which is located some two miles east of defendant's property, was not designated by plaintiff as a controlled-access facility, and defendant contends that there is no reasonable basis to justify plaintiff's making one road and not the other a controlled-access facility. There is, however, an important difference between the two connector roads. In the case of the road across defendant's land, the distance between Interstate 40 and Highway 70 is

Highway Comm. v. Manufacturing Co.

approximately 920 feet, while in the case of the Patton Cove Road, the distance between Interstate 40 and Highway 70 is 1825 feet. The trial court found that the shorter distance in the one case created a hazardous traffic condition which did not exist in the other. Although plaintiff may not exercise its statutory power to establish controlled-access facilities in an arbitrary or capricious manner, necessarily plaintiff must be accorded a wide latitude in making a determination that traffic conditions, present or future, justify creating a controlled-access facility in one place and not in another. Certainly the evidence in the present case is not such as to compel a finding that plaintiff here exercised its statutory powers in an arbitrary or capricious manner and the trial court committed no error in refusing to make such a finding.

[3] We also find no merit in defendant's further contention that plaintiff's action in creating a controlled-access facility over defendant's land, while failing to create such facilities along Patton Cove Road and along other connecting links between Highway 70 and Interstate 40, resulted in a denial of defendant's constitutional right to the equal protection of the laws. As noted above, the difference in length of the connector link over defendant's property, as compared with the Patton Cove Road connector, furnished a rational basis for plaintiff's determination that traffic hazards over the two connectors would not be the same. Furthermore, we do not understand that the equal protection clause of the Fourteenth Amendment operates to prohibit the Board of Transportation from establishing a controlled-access facility over one tract of land unless it also creates such facilities over every other tract which might be somewhat similarly situated. Of course, when, as here, such a facility is created, that fact must be taken into account in arriving at just compensation. G.S. 136-89.52.

Finally, defendant's assignments of error directed to the court's refusal to adopt defendant's tendered findings of fact are overruled. The findings which the court did make were supported by the evidence and these in turn supported the conclusions of law made and the order entered.

The order appealed from is

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.